IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
Case No. 4:04-cr-00056-M-2

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| v. ) | ORDER |
| ) | |
| NATHAN PETWAY, ) | |
| Defendant. ) | |

This matter comes before the court on Defendant Nathan Petway's (hereinafter "Petway") motion for compassionate release [DE 251] brought pursuant to 18 U.S.C. § 3582(c)(1)(A) and his pro se motions for a status update [DE 274] and to supplement his motion for compassionate release and expedite judgment [DE 287]. Petway predominantly rests his claim for compassionate release on three bases. He argues that release is warranted because his health conditions (diabetes and hypertension) place him at risk of severe complications should he contract COVID-19. He also argues that subsequent changes of law and the disparity between his and his codefendants' sentences warrant relief. For the reasons that follow, the motions are denied.

I. **Background**

The court has previously summarized the factual and procedural background for this matter in its March 25, 2021 order denying relief ("Denial Order") [DE 262]. The court incorporates by reference its prior summary for the disposition of the pending motions.

In the Denial Order, the court considered Petway's COVID-19 argument. In particular, the court held that "Petway has demonstrated that he is at an increased risk of developing a severe illness from the coronavirus. However, Petway has failed to demonstrate 'a *particularized high*

risk of susceptibility to coronavirus,' especially considering the large portion of the general population who suffer from the same conditions." DE 262 at 7 (quoting *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (unpublished)). Additionally, the court found that "Petway has also failed to demonstrate a particularized risk of contracting the disease at his specific prison facility," explaining that "[c]ourts across the country have considered and found that there is no extraordinary and compelling reason to reduce the prison sentences of inmates who share the same medical conditions as Petway in the era of the coronavirus." *Id.*

On appeal, the Denial Order was vacated. The Court of Appeals for the Fourth Circuit clarified that "the court should have only assessed whether his particular health conditions placed him at an increased risk of severe illness from COVID-19." DE 270 at 6. In light of this ruling and the decision to remand this matter for further proceedings, this court allowed the parties to file additional briefing regarding Petway's claim for relief as it now stands. *See* DE 276.

On April 29, 2022, Petway filed his memorandum in further support of the instant motion. DE 279. Petway "asks that the Court consider the original arguments he presented to the Court in the context that he presented them—specifically his filings at DE 251, 252, 256, 258, and 259." DE 279 at 2. Accordingly, he reasserts his argument that his health conditions of diabetes and hypertension constitute extraordinary and compelling reasons for release in light of his risk of contracting COVID-19. *See* DE 251, 256, 258, 259. He also requests relief based on two other bases, namely subsequent changes of law affecting his present-day career offender designation and the sentencing disparity between him and his co-defendants. DE 279 at 3–8. The United States responded on May 11, 2022, opposing each asserted basis for relief. *See* DE 280 at 21–26.

On December 28, 2022, Petway filed a pro se motion for leave to supplement his compassionate release motion and to expedite judgment. DE 287. He provided several additional

points for the court's consideration, namely the guardian for his teenage daughter has passed away; he has symptoms of colon cancer; he will complete the first phase of a residential drug abuse program; and his risk report indicates a low risk of recidivism. DE 287 at 1–2. The United States responded in opposition to Petway's expanded points and reiterated its position regarding the 3553(a) factors. DE 289 at 3–5. This matter is ripe for disposition.

## II. Legal Standards

Upon a defendant's motion, a district court in its discretion may reduce a defendant's term of imprisonment if: (1) the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring such motion on the defendant's behalf *or* the lapse of thirty days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier; and (2) the court finds that extraordinary and compelling reasons warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021).[1] In deciding to reduce a sentence based on extraordinary and compelling reasons, the court must consider the factors set forth in section 3553(a), to the extent applicable, and determine that a reduction is consistent with applicable policy statements issued by the United States Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, 992 F.3d 326, 331 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 383 (2021).

The Sentencing Commission has outlined a non-exhaustive list of circumstances that constitute extraordinary and compelling reasons for compassionate release. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. n.1(A)–(C) (U.S. Sent'g Comm'n 2021) (hereinafter "U.S.S.G.") (listing terminal illness; a condition from which a defendant is not expected to recover

---

[1] Other grounds for reduction, inapplicable here, are outlined in § 3582(c)(1)(A)(ii) (listing that the defendant be at least seventy years old, served at least thirty years in prison, and have a BOP determination that he is not a danger to the safety of any other person or the community).

that substantially diminishes his ability to provide self-care within the correctional-facility environment; age 65 or older; and other listed requirements or enumerated family circumstances). Notably, § 1B1.13 pre-dates both the enactment of the First Step Act, which amended § 3582 to provide defendants with direct access to the courts, and the coronavirus pandemic. Consequently, the Fourth Circuit has found that "[t]he only policy statement that possibly could be 'applicable'" was § 1B1.13, but that provision, "[b]y its plain terms, . . . does not apply to *defendant-filed* motions under § 3582(c)(1)(A)." *United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020) (emphasis added); *see id.* at 281 ("What § 3582(c)(1)(A) requires is that sentence reductions be consistent with 'applicable policy statements.' And here, that consistency requirement simply is not implicated, for the threshold reason that there currently exists no 'applicable policy statement[].'").

However, the Fourth Circuit has since recognized that § 1B1.13, "though issued before Congress authorized defendant-filed motions, 'remains helpful guidance even when motions are filed by defendants'" for defining medical conditions that may serve as extraordinary and compelling reasons for a sentence reduction. *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting *McCoy*, 981 F.3d at 282 n.7); *see also United States v. Jenkins*, 22 F.4th 162, 169–70 (4th Cir. 2021) (stating that "the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient 'extraordinary and compelling circumstance' warranting a sentence reduction"); *United States v. Hargrove*, 30 F.4th 189, 197–98 (4th Cir. 2022) (approving consideration of §1B1.13, BOP Program Statement 5050.50, and other factors).

A defendant who seeks compassionate release under 18 U.S.C. § 3582(c)(1) bears the burden of establishing that such relief is warranted. *United States v. Rashaad*, No. 3:01-CR-195-

4

MOC, 2023 WL 2656566, at *3 (W.D.N.C. Mar. 27, 2023) (citing *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016) and *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014)). The court may deny a defendant's motion based on its consideration of the applicable 3553(a) factors, even if extraordinary and compelling circumstances exist. *See Kibble*, 992 F.3d at 331–32. "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t).

### III. Analysis

There is no dispute regarding exhaustion of administrative remedies. Thus, the court considers whether there are extraordinary and compelling reasons warranting compassionate release and whether the 3553(a) factors weigh in favor of such relief.

    A. <u>Evaluation of "Extraordinary and Compelling Reason"</u>

        (i) <u>Risk of Contracting COVID-19</u>

Petway argues his health conditions of diabetes and hypertension warrant relief in light of his risk of contracting COVID-19. *See, e.g.*, DE 279 at 2. Section 1B1.13 provides that an extraordinary and compelling reason for relief exists where an incurable "serious physical or medical condition" of the defendant "substantially diminishes the ability of the defendant to provide self-care within the environment" of the Bureau of Prisons ("BOP"). U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). To the extent that Petway's health conditions demonstrate a particularized susceptibility to contracting the virus and suffering an adverse health outcome, Petway's vaccinations mitigate his susceptibility to infection, thereby enabling him to provide adequate self-care within the environment of the BOP. *See, e.g.*, *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly

5

reduced."); *Benefits of Getting A COVID-19 Vaccine*, CDC (last updated May 11, 2023), https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html. Accordingly, his health conditions do not justify relief. *See, e.g.*, *United States v. Alston*, No. 5:11-CR-12-D, 2022 WL 18836537, at *3 (E.D.N.C. Nov. 7, 2022).

(ii) Career Offender Designation

Petway argues, due to subsequent changes of law, he would no longer qualify as a career offender under U.S.S.G. § 4B1.1 if sentenced today. DE 279 at 4–5. Petway first asserts that the Fourth Circuit in *McCoy* "recognized that the length of the defendant's sentence and the fact that it would be shorter if the defendant were sentenced under current sentencing law may properly be treated as an extraordinary and compelling reason." DE 279 at 4. He then points to the Fourth Circuit's decision in *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), for example, to explain why his predicate offenses, specifically conspiracy to sell or deliver cocaine and possession with intent to sell or deliver marijuana, would no longer qualify as offenses punishable by a year or more of imprisonment. *Id.*[2] Petway thus maintains that he has served "well in excess" of the low-end of his present-day guidelines range. *Id.* at 5 & n.2.[3]

Courts may "consider intervening changes of law or fact in exercising their discretion to

---

[2] Additionally, he points to (1) the expunction of his conspiracy conviction pursuant to the North Carolina Second Chance Act, N.C.G.S. § 15A-145.8A; and (2) the Fourth Circuit's decision in *United States v. Norman*, which held that drug conspiracy convictions without overt act requirements are not appropriate predicate offenses for career offender designations, 935 F.3d 232, 237–239 (4th Cir. 2019). *Id.* at 4–5.

[3] Petway's guidelines range would be 130–162 months for his robbery conviction and 84 months consecutive for his § 924(c) conviction, producing a total sentencing exposure of 214–246 months, if sentenced today at a criminal history category of Category VI and an offense level of 27, PSR ¶¶ 43, 70. As of June 21, 2023, Petway has served nearly 234 months or 78% of his original 300–month sentence.

6

reduce a sentence pursuant to the First Step Act." *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022). Of course, "the First Step Act does not compel courts to exercise their discretion to reduce any sentence based on those arguments." *Id.* at 2396. Courts are, however, compelled to "consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the § 3553(a) factors, determine—following the Fair Sentencing Act—whether a given sentence remains appropriate in light of those factors, and adequately explain that decision." *United States v. Troy*, 64 F.4th 177, 185 (4th Cir. 2023).

The court agrees that the aforementioned nonretroactive subsequent changes of law render the career offender designation inapplicable if Petway were sentenced today. However, the extent of the disparity between his actual and counterfactual sentences does not constitute an extraordinary and compelling reason for relief. Indeed, Petway has already received a windfall in light of his marginal career offender designation. The sentencing judge explained that his sentence reflects a downward variance because "the career offender status although correct under the guidelines is marginal and the defendant barely meets that criteria." DE 264 at 3. The original sentencing judge, therefore, acknowledged the impact of the career offender designation, varied downward to compensate for any outsized punishment as a result of that designation, and determined that a 300-month sentence was appropriate based on the 3553(a) factors. *See id.* Thus, without more, this judgment need not be revised on grounds already considered by the sentencing judge. *See Rita v. United States*, 551 U.S. 338, 357 (2007) ("The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him . . . ."); *United States v. Henry*, 2022 WL 2905057, at *2 (D. Md. July 22, 2022) ("While the compassionate release framework is meant to provide a "safety valve" to reduce an otherwise-final sentence if there is an "extraordinary and compelling" reason to do so, it is not meant to provide movants with an

7

Case 4:04-cr-00056-M  Document 290  Filed 07/05/23  Page 7 of 13

opportunity to simply relitigate their sentencings."). In addition, as explained below, the court independently finds that Petway's sentence is appropriate in light of the 3553(a) factors. *See Concepcion*, 142 S. Ct. at 2404; *United States v. Troy*, 64 F.4th 177, 185–186 (4th Cir. 2023).

### (iii) Sentencing Disparity Relative to Co-Defendants

Petway argues that the disparity presented by his and his codefendants' sentences is an extraordinary and compelling reason for relief. DE 279 at 6–8. Specifically, he argues that he has been imprisoned nearly eight years longer than codefendant Speight, who violently struck a bank teller on the back of the head, and nearly four years longer than codefendants Whitaker and Fobbs, both of whom, like he, were convicted after a jury trial. *See id.* at 7–8. The United States argues that Petway's sentence is properly based on an individualized assessment of his § 3553(a) factors. DE 280 at 25.

When imposing a sentence, the court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The court should "avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." *United States v. Booker*, 543 U.S. 220, 264–65, 12 (2005). Thus, "[a] sentencing disparity may, in limited circumstances, constitute an extraordinary and compelling reason to reduce a sentence and grant compassionate release." *United States v. Eccleston*, 573 F. Supp. 3d 1013, 1017 (D. Md. 2021).

The disparity between Petway's and his codefendants' sentences is neither unwarranted nor excessive so as to constitute an extraordinary and compelling reason for release. Petway's argument is largely unpersuasive for the same reasons as stated above. The original sentencing judge clearly recognized the potential disparity between Petway's and his codefendants' sentences, and as a result, imposed a 300-month sentence to appropriately account for any such disparity. DE 264 at 3

(explaining that the 300-month sentence, resulting in a 100-month disparity, "is more in accordance with parity," despite the career offender designation). As stated above, without more, the court need not revisit the same issue the original sentencing judge has already considered and decided when fashioning a sentence in his sound discretion. *Rita*, 551 U.S. at 357; *Henry*, 2022 WL 2905057, at *2. In addition, as explained below, the court finds that Petway's sentence is warranted based on an individualized assessment of the 3553(a) factors.

Petway argues that the approximately eight-year disparity between his and Speight's sentences is unwarranted because Speight pistol-whipped a female bank teller during the robbery. However, Speight substantially assisted the United States and earned a motion for downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). Thus, the disparity between Petway's and Speight's sentences is warranted.

Petway also argues for increased parity with Whitaker and Fobbs because they all proceeded to trial. However, Petway does not point to any other similarities in their offense conduct or criminal history to support his claim. Moreover, an examination of his codefendants' cases reveals significant differences justifying the disparity presented by their sentences. Whitaker entered the criminal justice system as an adult at age 18 and accumulated fewer violent and repeat convictions than Petway. *Compare* DE 233 ¶¶ 22–30 (reporting only one simple assault conviction at age 18), *with* DE 236 ¶¶ 21–40 (reporting, for example, three simple assault convictions from age 16 to 23). The same holds true for Fobbs. *See* PSR ¶¶ 22–30, *United States v. Fobbs*, Case No. 5:03-cr-310-D (E.D.N.C. Sept. 29, 2004), DE 145. Petway's argument from Fobbs also ignores Fobbs's role in the offense, which mostly consisted of supplying the guns and driving the getaway vehicle. *Id.* ¶¶ 16–17. In light of these differences, neither Whitaker's nor Fobbs's sentences create an unwarranted sentencing disparity of extraordinary and compelling proportions.

(iv) Other Considerations

Petway alleges the guardian for his teenage daughter has passed away and he should be released to care for her. DE 287 at 1. The relevant policy statement provides that an extraordinary and compelling reason exists where "the caregiver of the defendant's minor child or minor children" has died. U.S.S.G. § 1B1.13 cmt. n.1(C). The court notes, "no paternity has been established for this child and there is no active child support order." DE 236 ¶ 50. Even so, his daughter appears to no longer be a minor, as she has already reached the age of 19. *See id.* He also fails to explain why other family members cannot care for his daughter. *See Tucker v. United States*, 2020 WL 4740480, at *3 (E.D. Va. Aug. 14, 2020).[4] The death of his daughter's guardian, therefore, does not constitute an extraordinary and compelling reason for release.

B. Consideration of the § 3553(a) Factors

Although not required to do so,[5] the court also finds that consideration of the factors set forth in 18 U.S.C. § 3553(a) weighs against granting Petway's motion. Section 3553(a) requires that a "court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." In determining whether such purposes have been fulfilled with respect to the present motion, the court should consider, *inter alia*, the nature and circumstances of the offense, the history and characteristics of the defendant, and the

---

[4] Petway raises three other points: he has symptoms of colon cancer, will complete the first phase of BOP's drug rehabilitation program, and has a low risk of recidivism per a risk report by the BOP. He fails to state a claim for relief based on his alleged symptoms and program participation under the relevant policy statement. *See* U.S.S.G. § 1B1.13 cmt. n.1(A), 3. The court considers his program participation and recidivism risk in the context of the 3553(a) factors *infra*.

[5] *United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021) ("If a district court finds that a defendant has demonstrated 'extraordinary and compelling reasons' for release, it must then consider the § 3553(a) sentencing factors 'to the extent that they are applicable.'" (quoting 18 U.S.C. § 3582(c)(1)(A))).

need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *See id.*; *see also United States v. Jenkins*, 22 F.4th 162, 170 (4th Cir. 2021).

Petway has demonstrated extensive rehabilitation during his incarceration. Indeed, in the Denial Order, the court wrote:

> Petway is an exemplary inmate. During all his time in custody he has only incurred one, minor infraction for cooking in his cell. DE-251 at 1. He has taken advantage of vocational and educational opportunities, maintained employment, and remained a dedicated father to his two children. DE-251 at 1, 4–6. Petway's own words, and those expressed by family and friends in letters of support, demonstrate the self-awareness and growth that has taken place.

DE 262 at 3. However, a record of rehabilitation is not enough; the court must balance Petway's rehabilitation efforts with the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. *McCoy*, 981 F.3d at 286 n.9. To this end, the court finds Petway's offense conduct is significant:

> On May 30, 2003, the instant investigation was initiated by the Tarboro Police Department (TPD), Tarboro, North Carolina, in conjunction with the Federal Bureau of Investigation (FBI), upon the report of an armed robbery at the Telco Credit Union at 1720 Barlow Road. According to credit union employees and witness statements, three armed assailants, subsequently identified as Cedric Speight, NATHAN PETWAY, and Scottie Whitaker, approached the bank from a nearby wooded area. The three assailants wore dark clothing and were masked with bandanas that covered the lower portions of their faces. Whitaker remained outside of the bank and ran to the drive-through window where he aimed a shotgun at customers as they sat in their vehicles. One of the fleeing customers called the authorities as Whitaker took aim at the window teller employee who was told "Don't you touch that button" and "I'll shoot if you move."

> While Whitaker remained outside, Speight and PETWAY ran inside the credit union where they immediately threatened to shoot anyone who ran away. Speight approached a female employee and placed the muzzle of his handgun into her back as she was told "I'm going to shoot you if you run!" PETWAY jumped atop a nearby teller counter top where he also took aim at the same employee and stated, "Don't you push no buttons, don't push any buttons or I'm going to shoot." Speight prodded the female employee with his handgun as she was led to a money drawer behind the teller counter. Speight demanded that she open the money drawer, but she became increasingly fearful and nervous. Her hands trembled when she attempted to insert the key into the money drawer. The employee heard "Bitch, if you don't get that drawer open, I'm going to shoot you!" She pleaded to Speight that she was trying to unlock the drawer, but Speight struck her in the head with his handgun and yelled "Hurry up!" The employee's knees buckled as she struggled to keep from falling, but she managed to open the money drawer. Speight and PETWAY grabbed handfuls of cash before they fled with Whitaker from the credit union. A credit union audit revealed $9,440 was stolen.

DE 236 ¶¶ 11–12. Undoubtedly, Petway mounted the countertop not only to threaten to kill the defenseless bank teller at gunpoint but also to "shoot anyone who ran away" during the robbery. *See id.* ¶ 12. He did so while wielding a .357 magnum handgun. *Id.* ¶ 15. His conduct uniquely jeopardized "the lives of bank employees and customers" and "overwhelmed with fear" the bank teller who had to look down the barrel of his gun and hear threats of death from a masked assailant. *See id.* ¶ 20. The bank teller "reportedly suffered a tremendous amount of emotional trauma and has received medical and psychiatric treatment." *Id.* Granting the requested reduction would undermine the need for Petway's sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Petway's criminal history is also significant, despite his reported low risk of recidivism. He entered the criminal justice system at the age of 14 on a charge of larceny. *Id.* ¶ 21. At the age of 15, he was charged with breaking and entering. *Id.* Unfortunately, this pattern of similar criminal conduct persisted. *See* DE 236 ¶¶ 22–26, 28, 37, 38. He threatened, assaulted, and stole not just from men, *id.* ¶¶ 37, 38, but also from many women, *id.* ¶¶ 22, 23, 24, 26, 28. In the span of nine years, from age 14 to 23, he amassed repeat convictions, demonstrating a propensity to use

violence for material gain. Indeed, three years before the instant offense, he used a handgun to steal $100 from a victim. *Id.* ¶ 37. His conviction and resulting custodial sentence (nine to eleven months, *id.* ¶ 37) did not deter him from repeating the same kind of behavior a couple years later through the commission of the instant offense. Based on this extensive and repetitive criminal history, the sentence originally imposed affords the appropriate level of deterrence to criminal conduct. A reduction would inappropriately mitigate the deterrence effect of his sentence.

In sum, the court has fully considered the § 3553(a) factors. The court has previously considered the need for the sentence to avoid unwarranted sentencing disparities. This factor does not favor relief for the reasons previously stated. Further, despite his rehabilitative efforts, Petway's offense conduct and criminal history strongly implicate the need for his sentence "to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment," and "to afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A)–(B).

## IV. Conclusion

For the foregoing reasons, Petway's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [DE 251] is DENIED. The motions for a status update [DE 274] and to supplement his motion for compassionate release and expedite judgment [DE 287] are DENIED as MOOT.

SO ORDERED this 3d day of July, 2023.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE